**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:                                       ) | |
|                                              ) | Case No. 05-B-16227 |
| VIRGINIA SCOTT,                              ) | Chapter 7 |
|                                              ) | Honorable A. Benjamin Goldgar |
|              Debtor.                         ) | |
| _____ ) | |
|                                              ) | |
| ACCESS LENDING CORPORATION, a                ) | |
| Texas Corporation,                           ) | |
|                                              ) | |
|              Plaintiff,                      ) | |
|        v.                                    ) | Adversary Proceeding No. |
|                                              ) | 05-016227 consolidated with |
| VIRGINIA SCOTT, MOHAMMAD                     ) | No. 05-01715 |
| TAGHIE KAKVAND, also known as "Mike          ) | |
| Kakvand," ROBERT M. FRANCISCO, also          ) | |
| known as "Mark Francisco," CHARLES C.        ) | |
| WITTE, SYNOVATION DEVELOPMENT                ) | |
| LLC, an Illinois limited liability           ) | |
| corporation, EVELYN FRANCISCO,               ) | |
| FABIOLA TORRES, ANGELICA                     ) | |
| TORRES, INFINITI FINANCIAL                   ) | |
| CORPORATION, a Michigan Corporation.         ) | |
|                                              ) | |
|              Defendants.                     ) | |
| _____ ) | |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO**
**MOTIONS TO DISMISS FILED BY DEFENDANTS**
**VIRGINIA SCOTT AND ROBERT AND EVELYN FRANCISCO**

Plaintiff and creditor Access Lending Corporation ("Access"), by its attorneys, respectfully submits the following consolidated response to the motions to dismiss filed by Defendants Virginia Scott ("Scott" or "Debtor") and Robert and Evelyn Francisco (collectively, the "Franciscos").

**I.     Introduction**

This case concerns a criminal and civil conspiracy involving Debtor, Defendants and others not named in this adversary complaint. The object of the conspiracy was to fraudulently induce Access to fund more than $1.3 million for a series of sham real estate transactions in which Debtor nominally purchased nine dilapidated condominium units from Defendant Synovation Development LLC at vastly inflated prices. In reliance on false and fraudulent financial statements and appraisals prepared by or on behalf of Defendants, Access funded Debtor's nominal purchase and Defendants absconded with the loan proceeds. Debtor's participation in the fraudulent scheme bars her discharge from bankruptcy and gives rise to numerous other claims against her and her co-conspirators. As a result, Access filed its adversary complaint against Defendants and its complaint objecting to Debtor's discharge.[1]

On August 25, 2005, the Franciscos filed a motion to dismiss. On August 29, 2005, Debtor filed an additional motion to dismiss that essentially duplicates the Franciscos' motion. The Franciscos and Debtor advance two basis for dismissing the adversary complaint. First, they claim that the Court lacks subject matter jurisdiction. Second, they claim Access has not alleged that it reasonably relied on Defendants' false statements.

As discussed below, the Franciscos' and Debtor's arguments are without merit. The Court has subject matter jurisdiction over this case. There is no doubt Access' objection to Debtor's discharge is a core proceeding. Furthermore, pursuant to Seventh Circuit authority,

---

[1] Access originally filed this adversary proceeding and objected to Debtor's discharge in a subsequent adversary proceeding (Case No. 05-ap-01715). At the initial status hearing of this case, the Court consolidated the two adversary proceedings and asked Access to file an amended complaint reflecting the consolidation. On September 21, 2005, Access filed its consolidated Complaint in accordance with the Court's directive.

Access' claims against Debtor's joint tortfeasors (*i.e.,* the Franciscos and the other Defendants) are "related to" the bankruptcy case because they are a "result of the same acts, performed by the same individuals, as part of the same conspiracy" as Access' claims against Debtor. *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998). The claims against the joint tortfeasor Defendants also "relate to" Debtor's bankruptcy case because they affect the amount of Debtor's potential liability and the amounts to be distributed to Access.

Defendants' second basis to dismiss the complaint is frivolous. Access plainly alleges that Defendants knew and intended that Access would rely on the false statements and that Access relied on the false statements when it funded the loans. Further, defendants ignore that under the conspiracy claim, as a matter of law, to be liable for conspiracy each member of the conspiracy need not know each fact necessary for the commission of the crime, but is charged with the knowledge and actions of his or her co-conspirators. Here, as alleged, at minimum, Defendants Synovation, Infiniti, Kakvand and Robert M. Francisco had specific knowledge of the relationship between Access and Infiniti which knowledge is imputed to all of the Defendants. Accordingly, the Court should deny the motions to dismiss.

## II.     Factual and Procedural Background

### A.     Facts Giving Rise to the Complaint

As set forth in the complaint, Access is a warehouse lender to mortgage brokers. Access funded the loans originated by Defendant Infiniti Financial Corporation ("Infiniti"). (Complaint, ¶ 57).

Defendants engaged in a conspiracy to defraud Access in connection with the sale of "condominiums" in an apartment building at 6200-02 S. Champlain Ave., Chicago, Illinois (the

3

"Apartment Building").  To execute the conspiracy, Defendants purchased the Apartment Building at a low price, falsely claimed that it rehabilitated the units of the building and then sold the units at grossly inflated prices to a nominee buyer (*i.e.*, Debtor), who obtained the funds to "purchase" the units from Access.  (Complaint, ¶¶ 57-70).  Defendants induced Access to fund the loans nominally made to Debtor by submitting loan applications that, among other things, falsely represented: (1) Debtor's assets, (2) that Debtor was the purchaser of the units, and (3) that she had not borrowed any of the down payments for the units.  (Complaint, ¶¶ 62-63).  In addition, Defendants procured and submitted to Access fraudulent appraisals that grossly inflated the value of the units and represented that the units had been rehabilitated when, in fact, they were in dilapidated condition.  (Complaint, ¶ 64).  In reliance on the false and fraudulent statements, Access funded the purchase price and Defendants absconded with the money.  (Complaint, ¶¶ 72-74).

Defendants in this case are all persons involved in the conspiracy and that played different (but, oftentimes overlapping) roles in the conspiracy.  The architect of the conspiracy was Defendant Mohammed Kakvand ("Kakvand").  Defendants Synovation, Witte and Robert M. Francisco acquired the Apartment Building and then sold the nine units at inflated prices to Debtor.  (Complaint, ¶ 59).  Defendants Kakvand and the Franciscos recruited Debtor to be part of the conspiracy.  (Complaint, ¶ 61).  Debtor and Defendant Robert M. Francisco prepared the false loan applications.  (Complaint, ¶ 62).  Further, Defendants Kakvand, Robert M. Francisco, Witte and Synovation obtained the false appraisal reports described above.  (Complaint, ¶ 64).

Defendant Infiniti, through its employees Defendants Angelica and Fabiola Torres, also was part of the scheme.  (Complaint, ¶¶ 67-69).  Infiniti and the Torres Defendants knew the

4

loan applications and appraisals were false and fraudulent, but intentionally sent them to Access to induce Access to fund Debtor's nominal purchase of the condominiums. (Complaint, ¶ 69). Each of the Defendants, including the Franciscos and Debtor, knew that the purchases were sham transactions made solely to induce Access to fund the loans so Defendants could abscond with the loan proceeds. (Complaint, ¶ 71).

**B. Access Sues Defendants**.

To recover the amounts stolen from it, on February 7, 2005, Access filed a four-count complaint against all Defendants (except Infiniti) in the Circuit Court of Cook County, Illinois. Debtor and the Franciscos each filed motions to dismiss the complaint in its entirety. Contrary to Debtor's and the Franciscos' statements, the Circuit Court did *not* dismiss the complaint in its entirety, but only dismissed the fraud and conspiracy counts *without* prejudice so that Access could allege further particulars of the fraud. The Circuit Court denied the motions to dismiss Access' claims for unjust enrichment and an accounting. *See* Exhibit 1, attached hereto. Furthermore, the Circuit Court specifically rejected the same argument Defendants make in the instant motions (*i.e.*, that Access did not sufficiently allege that it relied on Defendants' misstatements). *Id.* at p. 3 ("It must be noted that this Court is not finding, as a matter of law, that Plaintiff failed to allege the element of reasonable reliance.").

Shortly after the Circuit Court ruled on the motions to dismiss, Access learned that Debtor had filed for bankruptcy protection. As a result of the bankruptcy filing, Access' lawsuit in state court was stayed pursuant to 11 U.S.C. § 362. On several occasions, Access advised the Circuit Court, Debtor and the Franciscos that Access would determine whether to file its amended complaint in the Circuit Court or file it as an adversary proceeding in connection with

Debtor's bankruptcy case. *See, e.g.,* Group Exhibit 2. Access determined it was required to litigate all issues pertaining to Debtor and the fraud in this Court and, therefore, voluntarily dismissed the state court action without prejudice. Access then filed what would have been the amended complaint as this adversary proceeding. While the gravamen of Access' claims remains the same, Access added the particular facts requested by the State court, three additional basis for relief against Defendants, and Infiniti as a named Defendant.

### III.     Argument.

#### A.     This Court Has Subject Matter Jurisdiction Over This Adversary Proceeding.

Debtor and the Franciscos both claim that the Court does not have subject matter jurisdiction over this consolidated proceeding because it involves claims asserted against non-debtors that do not "relate to" the bankruptcy case.[2] Defendants are incorrect. This Court has jurisdiction over this case because it both arises under the Bankruptcy Code and is "related to" the Debtor's bankruptcy case.

#### 1.     The Applicable Law.

Pursuant to 28 U.S.C. § 1334(b), this Court (*vis a vis* the reference from the District Court) has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Pursuant to 28 U.S.C. § 157(b), this Court has jurisdiction over "core proceedings arising under title 11 . . . ." Cases arising under title 11 are "limited to questions that arise during the bankruptcy proceeding and concern administration of the bankruptcy estate,

---

[2] Debtor claims that the adversary proceeding does not object to her discharge pursuant to 11 U.S.C. § 523. (Debtor's Mot., p. 2). As discussed above, the Court consolidated this adversary proceeding with Access' objection to discharge. Therefore, Debtor's argument is moot.

6

*such as whether to discharge a debtor." Zerand-Bernal Group, Inc. v.* Cox, 23 F.3d 159, 162 (7th Cir. 1994) (emphasis added); *see also Freedom Business Brokers v. Trlin*, No. 03 C 3883, 2003 WL 21976073, * 1 (N.D. Ill. Aug. 15, 2003); *Janazzo v. Fleet Boston Financial Corp.*, No. 01 C 6939, 2002 WL 54541, * 3 (N.D. Ill. Jan. 15, 2002) (determination of whether Debtor's property is subject to a constructive trust is a core proceeding).

The seminal case for determining when cases are "related to" a bankruptcy proceeding is *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995). In *Celotex*, the Supreme Court noted that 28 U.S.C. § 1334 "must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Id.* at 308. The Supreme Court held that "related to" jurisdiction can include "suits between third parties which have an effect on the bankruptcy estate." *Id.* at 308 n. 5.

One of the primary purposes of allowing bankruptcy courts to hear cases relating to the bankruptcy case "is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the estate." *Zerand-Bernal* 23 F.3d at 161-62. In addition, matters are "related to" the bankruptcy estate if they affect the allocation of property among creditors. *Freedom Business Brokers*, 2003 WL 21976073 at * 2. Moreover, tort claims brought by creditors against non-Debtor joint tortfeasors that involve the same facts, the same conspiracy, and the same theories of liability as the creditor's claim against the debtor are "related to" the bankruptcy case. *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).

The *Apostolou* case presents the mirror image of this case. There, the creditor sued the debtors and their co-conspirators in federal district court to recover funds stolen through a *ponzi* scheme. The creditors voluntarily dismissed the debtors in light the automatic stay and

attempted to proceed on the claims against the non-debtor joint tortfeasors. The bankruptcy trustee sought to enjoin the suit, claiming that the creditors' claims were property of the estate. The bankruptcy court (Judge Sonderby) enjoined the creditors from proceeding in the district court. On the initial appeal, the district court (Judge Castillo) reversed the bankruptcy court, finding that the creditors' claims were not property of the estate. The trustee appealed to the Seventh Circuit. While the Seventh Circuit agreed with Judge Castillo that the creditors' claims were not property of the estate, it nevertheless reversed his ruling, holding that the creditors' lawsuit was "related to" the bankruptcy case within the meaning of 28 U.S.C. §1334(b) and, therefore, the case should not proceed outside of the bankruptcy court. Specifically, the Seventh Circuit noted:

> While the Apostolou Plaintiffs' claims are not "property of" the Lake States estate, it is difficult to imagine how those claims could be more closely "related to" it. They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy. We can think of no hypothetical change to this case which would bring it closer to a "property of" case without converting it into one.

*Id.*[3]

---

[3] In addition to *Apostolou*, other courts within this district have applied these general rules to hold that disputes involving creditors, the debtor and other third parties are properly before the bankruptcy court. *Freedom Business Brokers v. Trlin*, No. 03 C 3883, 2003 WL 21976073, * 1 (N.D. Ill. Aug. 15, 2003) (action against debtor and third parties for fraud was related to bankruptcy case wherein plaintiff had filed an objection to discharge based upon the fraud); *Megiola v. Maxwell*, 293 B.R. 443 (N.D. Ill. 2003) (shareholders' lawsuit against officers and directors of debtor was related to bankruptcy case because any amount paid by insurer in connection with lawsuit would diminish the amount needed to indemnify the directors and officers); *Janazzo v. Fleet Boston Financial Corp.*, No. 01 C 6939, 2002 WL 54541, * 3 (N.D. Ill. Jan. 15, 2002) (lawsuit by third party against creditor of debtor was related to bankruptcy case because the lawsuit potentially would determine the amount of creditor's claim); *Apex Investment Assoc., Inc., v. TJX Companies, Inc.,* 121 B.R. 522, 526-27 (N.D. Ill. 1990)

The *Freedom Business* case also is instructive. In that case, a creditor (Freedom Business) brought suit against the debtor (Zoran Trlin), his wife, and their two businesses for fraud and fraudulent transfers. The suit was pending the District Court when the debtor moved to have it transferred to the bankruptcy court. In addition to the action in the district court, Freedom Business also had filed an objection to discharge based on the same conduct in the bankruptcy court. The District Court (Judge St. Eve), over the objection of Freedom Business, transferred the complaint to the bankruptcy court, noting that the issues presented by the objection to discharge were the same as those presented by the objection to discharge. Thus, "the sought relief would have a direct impact on Zoran Trlin's estate and affect the amount of property available for the creditor." *Freedom Business Brokers*, 2003 WL 21976073 at * 2.

### 2.  The Pending Adversary Complaint Directly Affects the Administration of the Estate and the Amount of Property Potentially Available for Distribution.

Applying the foregoing principles to the facts of this case, it is clear that Access' claims against Debtor are inextricably intertwined with its claims against the joint tortfeasors. As an initial matter, Access' objection to Debtor's discharge (Complaint, Counts I-III) is a core proceeding. *See* 28 U.S.C. §§ 157(b)(2)(K) and (J). The gravamen of Access' case is that the Defendants (including Debtor) committed a fraud whereby Access was duped into funding Debtor's nominal purchase of nine condominium units. Debtor's participation in that fraud

---

(creditor's suit against non-debtor guarantor was related to bankruptcy proceeding because the "resolution of this case will affect the arrangement of the creditors, and alter the debtor's rights and liabilities with respect to the claims against the estate."); *Enesco Corp. v. Callaway*, No. 90 C 0376, 1990 WL 114198 (N.D. Ill. Aug. 2, 1990) (creditor's suit against non-debtor was related to bankruptcy case because any amount recovered from defendant would reduce creditor's claim against the debtor's estate); *In re Destron, Inc.*, 38 B.R. 310 (Bankr. N.D. Ill. 1984) (creditor's suit against non-debtor that was co-liable with debtor was related to bankruptcy case because any amount recovered from defendant would reduce creditor's claim against the debtor's estate).

forms the primary basis for Access' objection to her discharge. Debtor, no doubt, will argue that she did not knowingly participate in the fraud, but if there was a fraud committed, it was committed by the other Defendants. Therefore, as in *Freedom Business*, to determine whether Access' claim is dischargeable the Court necessarily will have to determine the relative culpability of the other Defendants.

The Court also has "related to" jurisdiction over the non-Debtor Defendants. The Seventh Circuit's decision in the *Apostolou* and the District Court's opinion in *Freedom Business* mandate that this Court exercise jurisdiction over the non-Debtor Defendants. Each Defendant is charged with participating in the same conspiracy, arising out of the same set of facts, that resulted in the theft of same amount of money. Indeed, pursuant to *Apostolou*, had Access attempted to go forward with its claims against the non-Debtor Defendants in another court, the Trustee, Illene F. Goldstein, could have insisted that the case proceed in this Bankruptcy Court. The Seventh Circuit's ruling is well-rooted in logic and is consistent with its earlier analysis wherein it noted that "that section 1334(b) allows to be forced into bankruptcy so that all claims by and against the debtor can be determined in the same forum." *Zerand-Bernal* 23 F.3d at 161. Simply, it would be a waste of judicial resources to require Access to file one suit objecting to Debtor's discharge and another suit in a different court against Debtor's co-conspirators that concerns the same set of facts, same witnesses and same proof. To do so, may result in inconsistent results.

The case also is "related to" the bankruptcy case because it directly affects the amounts available for distribution and the amount of Access' claim against Debtor. Pursuant to Count IV, Access seeks contribution from the joint tortfeasors, who will be required to contribute to Debtor's liability to Access.[4]

Despite the obvious relationship between Access' claims against the joint tortfeasors and the bankruptcy case, the Franciscos contend the Court should not exercise jurisdiction because they are entitled to a jury trial. As an initial matter, so long as all parties consent, this Court can conduct a jury trial. 28 U.S.C. §157(e). Furthermore, the fact that Defendants have a right to a jury trial is not a proper basis to move to dismiss. A jury trial is available in this Bankruptcy Court. Alternatively, Defendants can move the District Court to withdraw the reference at the appropriate time *after* discovery and other pre-trial proceedings have been completed. *See In re Conseco Finance Corp.*, 324 B.R. 50, 55-56 (N.D. Ill. 2005) (policy of judicial economy warrants that resolution of pre-trial proceedings remain in bankruptcy court).

Finally, in the alternative, if the Court is at all concerned that it does not have jurisdiction, Access notes that the District Court also would have jurisdiction based on diversity of citizenship. Access is a citizen of Texas, and all Defendants are citizens of Illinois. Therefore, the Court could recommend to the District Court that the reference be withdrawn rather than dismiss the case.

---

[4] The facts also give rise to a fraudulent transfer claim. As set forth in the complaint, the real estate transactions at issue were not supported by fair consideration. Defendant Synovation, which is owned and controlled by Defendants Kakvand, Robert M. Francisco and Witte, sold the nine units to Debtor in exchange for more than $1.3 million. Thus, Debtor's transfer of the $1.3 million that was obtained from Access was fraudulently transferred to certain of her co-defendants. Access has asked the Trustee to allow it to bring such action on behalf of the Chapter 7 estate. The Trustee has indicated that she is not opposed to any action which will make funds available to satisfy claims.

11

**B.    Access Has More than Sufficiently Alleged that it Relied on Defendants' Fraudulent Conduct.**

Debtor and the Franciscos also attempt to address the merits of the Complaint, moving to dismiss the *entire* complaint, claiming that Access did not allege that it reasonably relied on Defendants numerous false statements. In evaluating a motion to dismiss, the Court must take all well-pleaded allegations as true and view all logical inferences from those facts in favor of the non-moving party. *See Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004). A claim will not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

To sustain a cause of action for fraud, a plaintiff must plead that a misrepresentation was: "(1) a false statement of material fact; (2) known or believed to be false by the party making them; (3) intended to induce the other party to act; (4) acted upon by the other party in reliance upon the truth of the representations; and (5) damaging to the other party as a result." *Cwikla and D2 v. Sheir*, 345 Ill. App. 3d 23, 30, 801 N.E.2d 1103, 1110 (1st Dist. 2003). Fed. R. Civ. P. 9(b) requires that Access plead its fraud claim with particularity, specifically identifying the false statements, who made the false statements, when they were made, how they were made, and to whom they were made. *Vicom, Inc. v. Harbrdige Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (plaintiff must identify person who made misrepresentation, the time, the place, and content of misrepresentation). Rule 9(b), however, does not require Access to allege every fact to support every element of its fraud claim. *See, e.g., Barr v. Barr*, 188 B.R. 565, 570 (N.D. Ill. 1995) (Rule 9(b) should be read in conjunction with Rule 8(a), thus it is not necessary that a plaintiff plead each element of fraud, so long as circumstances of fraud have been set forth).

12

Here, Defendants do not argue (nor can they contend) that the fraud claim was not alleged with sufficient particularity. Instead, Defendants claim that Access has not alleged sufficient facts to support its allegation that it "reasonably relied" on the false statements. Debtor makes the specious claim that Access must allege facts sufficient to:

> explain how a school teacher like Virginia Scott "knows" what a "wholesaler" [sic] lender is or that its lender, Infiniti, may have an undisclosed downstream lender through a Master Repurchase Agreement.

(Debtor's Mot., p. 4). Both the Franciscos and Debtor claim that Access must allege facts that Debtor and the Franciscos "'knew' of the Master Repurchase [sic]." (Franciscos' Mot., p. 5; Debtor's Mot., p. 5).

As noted above, Defendants' precise argument previously was rejected by the Circuit Court of Cook County. (Exhibit 1, p. 3). This Court should do the same for several reasons. First, as a matter of law, there is no requirement that Defendants know the exact victim of their fraud. While Defendants couch their argument as Access' alleged failure to plead reasonable reliance, Defendants really argue that Access was not the intended victim of their fraud.

Almost forty years ago the Illinois Supreme Court rejected Defendants' same argument:

> To eliminate any uncertainty . . . , we emphasize that lack of direct contractual relationship between the parties is not a defense in a tort action in this jurisdiction. Thus, liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity.

*Rozny v. Marnul*, 43 Ill.2d 54, 61, 250 N.E.2d. 656, 660 (1969). In *Rozny*, a subsequent purchaser of a parcel of property was allowed to bring suit against a real estate surveyor who prepared an incorrect survey of the property even though the survey was prepared for a real estate developer years before the plaintiff purchased the property. The Illinois Supreme Court

13

concluded that the lack of privity between the purchaser and the surveyor was not a bar to the purchaser's tort claims and that the purchaser was more than a foreseeable victim of the improper survey. *Id.*

While Defendants cite *Rozny*, they mistakenly argue that it stands for the proposition that Defendants must have known that Access "was involved in the transaction." (Franciscos' Mot., p. 4). Defendants point to their misstatement of the law and leap to the conclusion that Access must allege that Debtor and the Franciscos knew the precise details of the relationship between Access and Defendant Infiniti. *Rozny* does not stand for such a far-fetched proposition, but only requires that Access be in a class of persons or entities that likely would rely on the information. *Id.* at 66-67. Simply, there is no requirement that Debtor, the Franciscos or any of their co-conspirators knew the exact identity of Access, but only that it is foreseeable that another entity would rely on the misstatements. Certainly, as a matter of law, it is more than reasonable to believe that Access – the entity that actually funded the loans – is the type of entity that Defendants expected or had reason to expect would rely on Defendants' false statements.

<u>Second</u>, even if Access is required to plead that Defendants' knew specifically that Access was funding the loans (it is not), Rule 9(b) does not require Access to plead every single fact supporting its allegation that Defendants' knew that Access was funding the loans. *See Barr supra.* Access plainly alleges that Defendants knew that Access was funding the loans. (Complaint, ¶ 57-58, 66-69, 71). Those allegations must be taken as true for purposes of a motion to dismiss. Thus, even if Defendants' lack of knowledge that Access would rely on the fraudulent conduct somehow is a defense, it is inherently a fact issue and does not provide a proper basis for a motion to dismiss.

14

Third, Defendants ignore that Access has alleged a conspiracy to defraud Access. It is well-settled that a co-conspirator need not know every fact or participate in every part of the conspiracy to be culpable. *See, e.g. Pinkerton v. United States*, 328 U.S. 640 (a conspirator may be responsible when the offense is committed by one of the conspirators in furtherance of the conspiracy even though conspirator does not participate or have knowledge of act). There is no doubt that Debtor's and the Franciscos' co-conspirator, Infiniti, knew that Access would fund the loans originated by Infiniti. (Complaint, ¶¶ 57-58, 66-69, 71). Accordingly, Infiniti's knowledge is imputed to Debtor and the Franciscos.

Finally, while Debtor and the Franciscos seek to dismiss the entire complaint, their sole argument is aimed at the fraud portion of Count IV. It in no way affects the remaining basis for liability.

\* \* \*

**IV.    Conclusion.**

Based on the foregoing, the Court should deny the Motions to Dismiss filed by Virginia Scott and Robert M. and Evelyn Francisco, order Debtor and the Franciscos to answer the Complaint within 14 days, and grant such other relief the Court deems just and proper.

Dated: September 27, 2005                Respectfully submitted,

                                                        ACCESS LENDING CORPORATION


                                                        By:_____/s B. Lane Hasler_____
                                                              One of Its Attorneys
                                                              B. Lane Hasler

B. Lane Hasler
B. Lane Hasler, P.C.
70 West Madison Street
Chicago, Illinois 60602
Tel.:   312-893-0551

Jonathan M. Cyrluk
Joni M. Green
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603
Phone: 312-338-0200
Fax:   312-338-0070